# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 2000 Session

## STATE OF TENNESSEE v. JIMMY RAY MITCHELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-T-905     Seth Norman, Judge**

_____

### No. M1999-02536-CCA-R3-CD - Filed October 30, 2000

_____

The appellant/defendant, Jimmy Ray Mitchell, appeals as of right from a judgment of the Davidson County Criminal Court from a jury conviction for the offense of driving under the influence of an intoxicant, first offense. The trial court imposed a sentence of eleven (11) months and twenty-nine (29) days, after the defendant serves fifteen (15) days, the defendant shall be on probation for eleven (11) months and twenty-nine (29) days. The trial court imposed a fine of five hundred dollars ($500). In his single appellate issue, the defendant contends that the trial court erroneously admitted evidence of the breath test results. After a complete review of the record in this cause, we find the defendant failed to allege such trial error in his original motion for a new trial. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which JERRY L. SMITH, J., and JOE G. RILEY, J., joined.

V. Michael Fox, Nashville, Tennessee, for the appellant, Jimmy Ray Mitchell.

Paul G. Summers, Attorney General and Reporter and Lucian D. Geise, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted by a Davidson County jury of the offense of driving under the influence of an intoxicant, in Count One, and in Count Two, the defendant was found guilty of driving an automobile while the alcohol concentration of his blood was ten-hundredths of one percent (.10%). The defendant challenges the trial court's ruling in permitting the State to introduce testimony concerning the defendant's concentration of blood alcohol as determined by a breathalyzer. We affirm the trial court's judgment.

**FACTS**

Eric Meihls, police officer and traffic crash re-constructionist for the Metro Police Department, testified on December 21, 1996, that he responded to a traffic accident involving two pick-up trucks. The defendant was sitting on a curb and he appeared to Officer Meihls to be intoxicated. The defendant's speech was slurred, his eyes were bloodshot, watery and red. As the defendant stood up, Officer Meihls noticed two different odors about the defendant. Officer Meihls noticed an odor of alcoholic beverage about the defendant and that the defendant had defecated on himself. When asked by Officer Meihls what happened, the defendant stated that he had been at Levi and Hanks, which is a bar in Hermitage, close to the accident scene, and when he went to pay his bill, he did not have his wallet with him. The people at Levi and Hanks allowed the defendant to leave to get his wallet. The defendant was on his way back to the bar to pay his bill and his vehicle was in the center turning lane of Lebanon Road. As the defendant was turning into the parking lot of Levi and Hank's, he was struck by another vehicle. In Officer Meihls' opinion, the defendant was too intoxicated to perform field sobriety tests. Officer Meihls had the defendant move from the curb closer to the officer's patrol car and the officer noticed the defendant staggered while walking. Although the defendant did not state how much he had to drink, he did state that he had his last drink at 3:00 p.m. Officer Meihls stated that he arrived at the scene at approximately 3:50 p.m.

During cross-examination, Officer Meihls stated that he did not observe any injuries on the defendant. Officer Meihls testified that his patrol car contained a tachograph in the trunk. Officer Meihls described the tachograph as being about the size of a coffee can. One end of the tachograph hinges down and there is a pressure-sensitive, circular piece of paper that is installed in it. A number of pins measure a variety of factors about the vehicle and records those factors on graph paper. Among those factors are time and speed of the patrol car. The tachograph is installed by a trained technician and that person is the only person to install and maintain the tachograph. Officer Meihls stated that the machine is an independent determination of where he is and what he is doing. Officer Meihls admitted that at his first encounter with the defendant, he could not give an opinion as to whether the defendant was legally intoxicated by law since a scientific test had not been performed. However, from Officer Meihls' personal observations, the defendant was too intoxicated to operate an automobile. Officer Meihls stated that he called Officer Merritt, the breathalyzer unit, between 3:50 p.m. and 4:00 p.m.

Lannie A. Wilder, a special agent for the Tennessee Bureau of Investigations, testified that he is in charge of the department that certifies breath tests used by police departments in Tennessee. Agent Wilder identified a certificate of performance for an Intoxilyzer 1400, Serial No. 127, dated November 26, 1996.

Officer Overton Merritt testified that he has been administering breath tests for the Metro Police Department for thirty-one (31) years. Officer Merritt stated that he responded to an accident on December 21, 1996, and observed the defendant sitting on the ground by a telephone pole. Officer Merritt noticed that the defendant had defecated on himself so the officer got some plastic

from his car. Officer Merritt made a plastic diaper for the defendant to keep the patrol car seats clean. Officer Merritt put the defendant in the back of his car and began observing him for more than twenty (20) minutes. During this observation, the defendant did not burp or hiccup. At one point, the defendant stated that he was just too drunk. Officer Merritt identified a certificate from the Tennessee Bureau of Investigations certifying that he had completed courses and instructions in the operation of Intoxilyzer 1400. Officer Merritt stated that he was operating Intoxilyzer 1400, Serial No. 127, on December 21, 1996. Officer Merritt identified a printout which contained the results of a breath test given to the defendant. Officer Merritt testified that the defendant registered point eighteen hundred percent (.18%) blood alcohol concentration. Officer Merritt described the defendant as being very drunk, staggered, with slurred speech and a strong odor of alcohol on his breath.

During cross-examination, Officer Merritt acknowledged that he maintained an activity report for his shift and his car contains a tachograph. When asked if this machine is an independent verification of where he went, what he did that day and when he was moving, Officer Merritt testified, "yes, but the times are not accurate." Officer Merritt stated that on December 21, 1996, the tachograph could be off as much as five or ten minutes. Officer Merritt stated that he put the defendant in his patrol car within one to ten minutes of his arrival at the accident scene. Officer Merritt gave the breath test to the defendant at 4:18 p.m. Although he could not say what time he arrived on the accident scene, Officer Merritt stated that he was on the scene for more than thirty (30) minutes. Officer Merritt identified his report No. 132, which indicated that the observation period of the defendant was for twenty-two (22) minutes. As to the tachograph in his patrol car, Officer Merritt stated that the graph indicated that he arrived at the scene at about sixteen hundred (4:00 o'clock) and left thirty (30) minutes later. When asked if he could get in and change the times on the tachograph, Officer Merritt responded, "Yes. During the shift we don't change them. We do not change the tachograph times -- if the clock is off we'll set the times. There is a little wheel on the side. We open it up and set it." Officer Merritt stated that he could not certify that the time on the tachograph was accurate.

On behalf of the defendant, Patricia (Patty) White, bartender for Levi and Hanks, testified that the defendant had been in the bar twice on December 21, 1996. The defendant came in the bar about 11:00 o'clock, drank maybe two beers and left. She stated that the defendant returned about 3:00 o'clock and had one other beer. In her opinion, when the defendant left he was not intoxicated. Ms. White testified that she had known the defendant about two years. During cross-examination, Ms. White stated that she did not know if the defendant had been drinking between 11:00 and 3:00 o'clock. Ms. White described herself as a credible witness, in that her husband had been killed by a DUI driver and she had raised a daughter for eighteen (18) years. She stated that although the defendant was a regular customer, he did not drink much in the bar.

Officer Meihls was recalled by the defendant concerning his testimony about the tachograph. Officer Meihls reiterated that to his knowledge, one person in the Metro Police Department calibrates the tachographs. Officer Meihls testified that he does have access to the tachograph. Officer Meihls stated that it is his policy to replace the graph paper on a daily basis before he goes

on duty. When he completes his shift, the graph is left in the patrol car and he changes it the next day. Officer Merritt does not check the times on the graph because his clock in the car is set to the dispatcher's time.

The defendant elected not testify on his own behalf.

## LEGAL ANALYSIS

The defendant asserts that the trial court erroneously permitted the State to admit the results of a breath test at his trial. More specifically, the defendant contends that the State failed to elicit any testimony as to the time that the observation period of twenty (20) minutes began as required by *State v. Sensing,* 843 S.W.2d 412, 416 (Tenn. 1992). First, the State argues that the defendant had waived this issue because he failed to raise it in his motion for a new trial. Tenn. R. App. P. 3(e). Second, the State met its burden of proving the requirements for admission of the breath test.

The failure to include an issue in a motion for a new trial may result in the waiver of that issue. Tenn. R. App. P. 3(e) provides in part:

> … [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

*See State v. Seagraves,* 837 S.W.2d 615, 618 (Tenn. Crim. App. 1992); *State v. Baker,* 785 S.W.2d 132, 135 (Tenn. Crim. App. 1989), *perm. app. denied,* (Tenn. 1990).

The record reflects that the defendant filed a motion for a new trial on October 13, 1999. The defendant asserts two assignments of error:

1. The evidence was insufficient as a matter of law to convict the Defendant of Driving Under the Influence or Driving Under the Influence Per Se;

2. The Court erred by not granting the Defendant's Motion to Suppress/Motion in Limine regarding the breath alcohol test because:

    a. The Defendant's consent to submit to the breath alcohol test was not voluntary but rather was coerced by the police officer after the Defendant first refused to take the test.

b.      The Court erred when sentencing the Defendant to fifteen (15) days in jail rather than the minimum sentence.

The defendant reserves the right to amend this motion before the hearing upon his receipt of the transcript of the trial proceedings.

On October 29, 1999, the trial court entered an order denying the assignments set forth in the motion for a new trial.

On November 11, 1999, the defendant filed an amended motion for a new trial which raised the following issues:

1.      The evidence was insufficient as a matter of law to convict the Defendant of Driving Under the Influence or Driving Under the Influence Per Se;

2.      The Court erred by not granting the Defendant's Motion to Suppress/Motion in Limine regarding the breath alcohol test because:

a.      An improper implied consent warning was given to the Defendant; and

b.      The Court erred in admitting the breath test result because the State did not prove by a preponderance of evidence that the breath test operator observed the Defendant eye to eye twenty minutes prior to the administration of the test.

c.      The Court erred when sentencing the Defendant to ten (10) days in jail rather than the minimum sentence.

In this direct appeal, the defendant raises the single issue of whether the trial court correctly admitted the results of the breath test performed on the defendant. We note that the defendant does not raise a question of the insufficiency of the convicting evidence to find the defendant guilty of driving under the influence or driving under the influence, per se. We agree with the State that the specific issue presented for appellate review is waived for the defendant's failure to raise the same in his motion for a new trial filed October 13, 1999.

The trial court's judgment is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE